Those of the intelligence agency, I'd like to speak your honor on behalf of GEICO. I'd like to reserve the right to two minutes for a moment. Just watch the clip. It's directly for the fellow of our governments. Your honors, under the California Supreme Court and Court of Appeal, the court has decided in their paper an element of bad faith refusal to settle in California is a conscious decision on the insurance company's part to forego a reasonable settlement opportunity. The California Supreme Court recognized in Wilson and the Courts of Appeal have recognized in other cases that bad faith can't be predicated on mere negligence, an honest mistake, or bad judgment. It's therefore our position that the district court urge to not grant a summary judgment for GEICO because there is no evidence in the record that GEICO consciously decided to let a settlement opportunity lapse. At most, it was guilty of negligence with respect to understanding whether or not the settlement deadline was running. Counsel, is there anything in the record? Senator, I probably agree with your analysis of California law, but when you look at the facts, it does seem like a series of negligence and noncommunications. Ryan, I don't know what the left hand was doing. Can your opponent point to anything in the record that suggests scienter, bad faith, willful neglect of any kind? I think not, your honor. In fact, the corroborating contemporaneous documents, in fact, shows the opposite. For example, the plain note entry by Jester Blayman Schirra on September 4th when he noted that the discovery responses still had not been received. This contemporaneous document, his scienter has stated why the clock was not yet running. Further, the conversation Mr. Blayman Schirra had with Attorney Nichols several days later in which he expressed the idea that he had not yet received the discovery responses. Mr. Nichols did not correct that misunderstanding, and that fact is understandable. Counsel, if I can ask you a couple of questions. How important is it in assessing the bad faith issue to understand what was the probability of liability of your insurance? It is an important threshold issue, your honor, although it doesn't end up being dispositive in this case. Okay, so it's important. And how important is it to understand the extent of excess exposure of your insurance to a damaged claim that exceeds policy limits? It's also an important threshold issue, although not dispositive here for reasons that I can't explain. One thing that's significant to recognize in assessing the totality of circumstances in this case is that the underlying accident involved multiple alleged tort facers. There are five different tort facers who were involved in the accident. Mr. Meritotti was the one who initially, due to his diabetic episode, lost control of his car, but then several additional vehicles plowed into the scene, and they were all sued as potentially responsible parties. So there were lots of policy limits available for potential settlement, and there was an uncertain allocation of responsibility among the different tort facers. In the context of a case like that, it was acknowledged early in the claim handling that it was important for GEICO to get a better sense of where the respective responsibility lay among the various tort facers so it can assess its own insurance responsibility. And also, too, because there was so much insurance available, not just GEICO's $100,000 but many other carriers, it was important to assess things like the actual damages sustained by the estate, what was the life expectancy, for example, of Mr. McDaniel, which was one of the reasons why the discovery responses were important for bank literacy because there was no evidence on the state of health at the time. That information was not provided by the earlier discovery responses of the SIRP and the financial ministries in New Zealand. Okay, so what about the cases that were relied upon by the district judge, Hamilton, Hagen, Julianson, and Krischke? All of the cases relied upon by the district judge, well, set aside Hagen because it wasn't a third-party liability case, but Julianson, Hamilton, and Krischke, all involved conscious refusals to settle by the insurance company. There was a settlement demand, and the insurance company, for one reason or another, said, no, we want to settle that. Those are cases that implicate the underlying purpose of the tort, which is to discourage insurance companies from dealing in calculated gamble with their policyholders' welfare by rejecting a reasonable demand in the hope of maybe saving a few bucks. Those facts simply aren't implicated. Council Judge Gould, if I can interject, then is it your position that if a settlement on offer, demand on its face has a deadline for response, that the insured can just ignore that and plead ignorance and say it's just negligence? No, Your Honor, that's not our position. Our position is if an insurance company understands that there's a settlement deadline and it nevertheless chooses to ignore the offer and allow it to expire, that's one set of facts which is consistent with the rationale of the tort that there has to be a conscious and deliberate act to forego a settlement. So what if they don't subjectively understand that, but it's plain on the face of the demand letter, so that objectively a reasonable person receiving the demand letter should know that's the deadline? In a situation like that, Your Honor, I would suggest that the totality of circumstances standard, which has been articulated by the various courts, and the requirement of a conscious decision would come into play if there is a good faith argument that this was in fact subterfuge or a bruise on the part of the insurance company to avoid settlement and to play dumb. That would be a set of facts on which an insurance company might feel unliable. But on the facts that we have here, we have a clear, undisputed record of a legitimate mistake, and perhaps even if the deadline wasn't running, which is an alternative argument, but even assuming it was, a legitimate mistake corroborated by contemporaneous documentation. Also supported by undisputed evidence that the insurance company interlockingly began the internal process of getting the settlement approvals, even though it believed the demand wasn't running. And in fact, extending an offer to settle a mere three and a half weeks after the deadline arguably expired. Those are facts that just aren't consistent with the notion of a company taking a calculated gamble with its insurer's interest in an effort to save Once the deadline had expired and the third party said, we're going to trial, what difference does the record show that UECO made to try to say, look, can we make a mistake here? We made you a full policy offer. Let's just do this. What effort was made there? Well, the record shows that on October 2nd, the day after Mr. Buenaventura had spoken to Mr. Nichols, and he had said, sorry, you're too late. We're off to the races. He sent a letter corroborating that that was the decision that was being taken. After that point, Mr. Nichols was unwilling to engage in settlement. That's what his response to Mr. Buenaventura was. Is there a requirement in insurance law for basically good people on both sides? Yes, Your Honor. In the California Supreme Court case called Krams Co, which is in the papers, there's discussion about the implied covenant being a two-way street. So in this case, is it fair to say, at least arguably, that when the statement was sent by the plaintiffs, the fact that they were unwilling to engage in any further discussions when you said, hey, this is a mistake, we intended to pay this whole thing, it's the whole policy limit, and they said, we think you're a big insurance company, we're going for the big bucks. What do we need to do with that? There's two ways that can be dealt with. One is under the doctrine of approximate cause. We've cited cases in the paper in which courts on facts like that have decided that the approximate cause of failure to settle was, in fact, the unwillingness of the claimant's counsel to engage in settlement or to accept a slightly late offer for no good reason other than the desire to have a bad faith case. The other way to analyze it is under the several cases that say that the claimant's settlement deadline does not set the outer limit of the time the settlement offered. Martin, Graziano, Boycourt, and even Cressy, in fact, all support the idea that a settlement offer which is made sometime after the expiration of the interlateral demand can nevertheless be found to be reasonable and in good faith and sufficient to avoid any liability for subsequent subsistence judgment. In this case, Geico said, we're giving you policy limits. No problem. We're set. That was pressed once or more than once, or they just said we're going to trial no matter what we're doing. On the record here, the facts are that the $100,000 was offered once. Once, Geico had confirmation that the recently discovered error, Melissa McDaniel, was going to be included, which is an important consideration because that wasn't, she wasn't, her existence wasn't known at the time that the demand was originally made. And it's important for Geico to make sure it gets a release of all possible claimants under the crane in the lead due cases. So that money was extended, and the response from Mr. Nichols was, we're off to the races. I'm not going to talk to you. Did the district judge have any kind of a last settlement conference before trial and say, well, what do we got here? Are you sure it's a policy limit? Anything like that ever? Dan, there's no evidence of it on the record here. I don't see a doubt about it. It's really up on his name reserve. I'm sure I'm talking to him. Yes or no, I would like to reserve the remainder of my time for one of you may do something else. Thank you. We'll hear from Amy Kelly. Good morning, Your Honor. Cindy Saxe, first line at Geico. As with their written brief, a volunteer attempt to mistake California law, misconstrue the facts of the case, and otherwise confuse the issues presented to this court, this is not a case of bad faith. Rather, it's a case of a breach of their duty of good faith under the covenant of good faith and fair dealing. Okay. We get that. But the cases that were cited in the California Supreme Court, as I read them, say that a duty of implied or rather an implied duty to settle involves situations where there's an unintentional or rather there is an intentional failure to accept a settlement offer. Do you agree with that? I don't agree with that. In fact, Your Honor, California courts, including in Chrissy, Allen, Lincoln, have all said that liability is imposed not for bad faith breach of the contract, but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. In Martin, another California case, they found that an insurer could not be relieved from bad faith liability by a belated and ineffective tender, which meant there's no protection to that. Well, but forgive me. People can read in different cases. What I see is the cases that you've cited involve a situation where there was an intentional decision made by the part of the insurance covenant not to pay a settlement offer that was demanded. In this case, if I understand the facts correctly, that's not what happened. What happened was you had the right hand not knowing what the left hand was doing, and they discovered belatedly that that had happened, and then they made the offer, and you said nothing to it. We're going to trial. That's a different case, isn't it, knowing the California Supreme Court has said this is a rule in implied duty to settle? Well, Your Honor, there's no evidence in this case that suggests prior to the deadline of plaintiff's offer that they intended to settle. In fact, there's nothing until three weeks after the fact that there was any indication that there was a willingness to settle. Therefore, based on the fact that they failed to settle, it appears to be an intentional failure to settle. You're explaining the fact that they didn't with intention. In other words, you're not citing 20 express evidence that made the determination. You're saying that the fact that they didn't settle satisfies California law. Is that your position? Yes. The fact that they did not respond to the settlement offer within a timeline permitted by plaintiffs, that they failed to engage in a settlement of the case. I don't think any California cases require willful intent or malicious conduct on the part of the insurer. I read them all requiring that. I don't understand your position at all. I don't get that. There should be one California Supreme Court case that says that if we can just get a case where there's no evidence that they intentionally stiffed you that this implied a duty to settle a blind. What's the case? I believe Martin. What are the facts of Martin that you rely upon? The facts of the case of Martin are that they failed to accept a $10,000 policy limit. And they didn't offer it until seven days later. And the court found that intentionally coming back after the offer had lapsed didn't allow them or didn't give them relief from that fee liability. Weren't there more facts involved in that? That wasn't there some evidence that they never intended to settle? They had offered $9,000 at some point. Okay, so basically there was a negotiation there. They didn't meet this case. You simply had, you know, one part said, well, we're moving along on this. It's a big company. Another part didn't communicate properly and didn't really realize what had happened. They said, hey, sorry, here's the money. And you said, no, we're going to try it. Well, I think that the facts are a little bit different, but I think the overall policy. Different but critical. Well, I think the whole thing in Martindale states that an insurer cannot be relieved of its liability for bad faith if it fails to reasonably accept what's the worst. Where's the bad faith here? Your Honor, we're not talking about bad faith here. You said bad faith. You can't be relieved from bad faith. I'm saying where's the bad faith here? And I apologize, I misstated. You can't be relieved of breaching your duty of good faith, if you're doing, by coming to the plaintiff's after their offer has lapsed in offering to then settle for a full apology. So what you're reading in California law is that you can breach an applied duty of good faith, in this case an applied duty to settle without any cianter based on negligence alone. Is that your position? That is our position, Your Honor. And I think if you look to the case of Shantoshi Gray, citing Al Rumpel, in fact, they state that an insurer- I didn't get the name of that case. What is it? Dal Rumpel. Dal Rumpel v. United States Auto Association. A 1995 case at 40 Cal Abs 4, 497. In that case, the court held that an insurer's delay or denial in the payment of policy benefits gives rise to short damages only if the insurer acted unreasonably or without proper cause. In that case, they also stated that the courts have never found that a delay or denial is reasonable, or they've only found that it is reasonable where there is an existence of a genuine dispute as to the existence of coverage liability or the amount of the insurance population. Counsel, excuse me, but I can't find that case. Was that cited in your brief? Yes. Well, I apologize. Shantoshi Gray is cited in our case. If I understood you correctly, you told me that you were referring us to Dal Rumpel. I was saying that the Shantoshi Gray case was cited as an additional case. So which is the case that you want us to look at? Shantoshi Gray. Shantoshi Gray. All right. I've got that case now. Thank you very much. Yes, Your Honor. Not Dal Rumpel? No. I was just saying that that was the one that was cited, and I understood you to be asking about that, a citation for Dal Rumpel. In that case, the court found that it was only reasonable to have a delay or denial to a plaintiff's settlement offer, which is the same situation as in this case, intent or not to settle a case where there is the existence of a genuine dispute of either the coverage of the claim or liability. Here, four months before a plaintiff's offer was ever even made, there was clear liability and clear coverage of the claim. Was there ever any assertion by the company that they did not intend to pay? Only the fact that they never responded to any of the plaintiff's requests to settle the case. Through the first letter, through the discussions with Mr. Gray, between Mr. Gray and Mr. Nichols, at the deposition, the second letter, there was no mention ever that they had intended to settle. But does that mean that they didn't say or not pay? I think it can be implied if they're never saying, well, we're looking to settle, that they're not looking to settle. And certainly without responding or asking any questions to clarify the settlement offer, they weren't looking to settle. But what it really gets down to, when you dance all around the thing, the reality of your position is that mere negligence is enough to establish a breach of the implied duty to settle under California insurance law. Is that correct? I think it's not just mere negligence, but as... But more is required. I think any, as certain California cases have found, the evasion of the spirit of the bargain, lack of diligence, or slacking off. The evasion of the spirit of the bargain? That's like your fair share of taxes, isn't it? It's all in the eye of the beholder. Well, certainly, but in an insurance case, an insurer is paid. They enter into a contract. They receive premiums. And their part of the bargain is to pay up on the policy limits when there's an accident that is covered. I understand the record. They have never said that they wouldn't pay again. Never said that. So you're taking the fact that they didn't pay as a refusal to pay, but not only a refusal to pay, but a bad faith refusal to pay and a breach of the implied covenant of the duty to settle. Is that right? Yes, but I think that there's a distinction between bad faith and the breach of the duty of the good faith. Okay, so it doesn't take bad faith to do that. So I want to get back to what I asked in the first place, which is, is it your position under California insurance law that all that's required to breach implied duty to settle is negligence, mere negligence? I think you have to look at the totality of the circumstance. But, yes, I think negligence is enough. So you do that, and all you find is negligence. Is that enough? I think, Your Honor, I think that is enough. I think based on the totality. So you're back to Martin again? I think Martin. I think that's linking the case of Thomas and also the case of Allen, all of which I've cited. If we conclude that California law requires more than mere negligence to breach an implied duty to settle, then you lose, don't you? Well, I think that based on the totality of circumstance, there is more than just mere negligence. I don't think. What is that evidence? I think the fact that they had all of the information four months before the offer was ever even made is a clear indication that they had everything they needed and that they knew that the offer was outstanding. By the time the offer was outstanding, they knew the offer began to run. They engaged in negotiation and still let the offer lapse. I think letting an offer lapse, knowing that there is a deadline out there, which is very clear through the Grights' written memorandum. Do you believe that letting it lapse is bad faith? I believe it is bad faith. Okay. So even if, let's say somebody's mother died, and they were able to deliver the letter, as far as you're concerned, they didn't deliver it too bad, there is no way it's bad faith, right? Well, certainly I think it goes to that. I think had Geico here come to plaintiffs on September 11th and said, you know what, we intend to settle. And that's their mistake. Their mistake was writing down that it was due September 11th on September 6th. I think we may be in a different position here. Even though we're getting to the point before you were absolute that they missed getting into specific facts about what was really happening, the record seems to show that you had different parties that had been to fail to communicate, basically. Nobody said, we're not going to pay. They were just working as one. They didn't give back. They made a mistake. But failure to communicate, Your Honor, is a failure to do their due diligence, and a failure to meet their duty under the covenant of good faith and fair dealing. You said that's either bad faith or that mere negligence is enough to trigger the duty to the implied duty to settle. Is that right? I think that I do believe that negligence can be enough to trigger that. And Martin, is your authority? I think Martin. As I said, Lincoln. I think even the recent Grayson case and Grace Yamano will also go towards that. I think if you also look to the Karma Developers case, which is a California Supreme Court case that goes to it, I think that the Wilson case as well states that a genuine dispute only exists where the insurer's position is maintained in good faith. And on reasonable grounds, I think it's unreasonable here that the insurer did not respond in any way until nearly a month after getting a settlement offer. Yeah. So with respect, the whole concept of bad faith is just as the name implies. If you have bad actors, people who the insurance company is just getting big company and they have a lot of money and they're supposed to pay the policies, and if they just game it, that's what the law is intended to punish. And appropriately so. I am searching, I'm afraid thus far in vain, to find that bad faith that you refer to. I see some negligence. I see some miscommunications. I'm not seeing bad faith. And you're telling me that the mere negligence is enough. To me, that is a quantum leap from how I read California law. And what Martin doesn't make it more beside, I mean, what besides Martin can you refer me to? Well, as I've already stated, there's the Betts case, the Chateau-Gibray case, the Lincoln case, and all of those demonstrate. And Kelsey, you just mentioned the Grayson case. Yes. Grayson, no for all states. Correct, Your Honor, but I think what Grayson court states is that an insurer's unwarranted refusal to do, to settle a case constitutes a breach of the implied covenant of good faith and fair dealing. There's nothing that warrants NICO's failure to respond to plaintiffs' motto. I agree with this sentence. All states did not refuse to settle, much less unreasonably or unquarterably refuse. In fact, all states attempted repeatedly to settle a case. Well, Your Honor, in that case, all states came forward on the day that the offer was due to lapse. They actually got their offer in prior to the deadline. None of the cases in California have ever dealt with an offer coming in three weeks later. In fact, Grayson, Graziano, all of these cases that discuss this issue, are cases where the plaintiff or the insurer has come forward within the deadline, reasonably come forward within the deadline and just offered a release, or offered a broader release than the plaintiff wants. And so I certainly don't think that those support plaintiff's case in this instance. Thank you, Counselor. Your time has expired. Thank you. Mr. Brooks, I believe you have some reserved time. Thank you, Your Honor. Just a few brief points. With respect to the Shanto-Chambera case, I would like to point out that that case is the source of the language adopted by the California Supreme Court in the Wilson case that bad faith can't be predicated on mere negligence, honest mistake, et cetera. With regard to the genuine dispute line of cases that was referred to by counsel, genuine dispute cases involve conscious refusals by the insurance company to do something to pay a client. The genuine dispute doctrine is raised as a defense to that. It says, yes, we refused to pay your client consciously, but we had a good reason to. Those line of cases have nothing to do with what we're dealing with here, which is mere negligence at most and lack of any conscious decision. With regard to the Martin case, there was a misstatement of some of the facts in the case. The Martin case was decided on a deferred record. The insurance company's argument was, even though we consciously rejected the demand, we offered the limits nine days later, therefore we're off the hook as a matter of law. What the court ruled is, no, you're not off the hook as a matter of law, because you're not necessarily on the hook as a matter of law. There's going to be an issue for a jury to decide whether it lays acceptance. Insufficiently timely can constitute contemporary good faith. That's part of our alternative argument, that there's at least a tribal issue on that, but because we have no conscious rejection, we shouldn't even have to get there. Last, I wanted to respond to the notion that GEICO had all the evidence that it needed to evaluate the case four months prior to the settlement demand. That's not an accurate characterization of the record. There was no information about Mr. McDaniel's state of health, and thus his earnings capacity, et cetera, until August 27th, when the discoverer responses were served. The earlier discoverer responses included Mr. Simpson's health. McDaniel had a certain privilege with respect to all those health questions. There was uncertainty about the identity of all the heirs until the discoverer responses were received. And, in fact, at the same time that the August 27th discoverer responses were received, the complaint was amended to add Melissa McDaniel as a plaintiff in the case. So that's another thing that wasn't known. The third thing that wasn't understood was the full set of facts surrounding Mr. Maratoni's conduct until his deposition on August 27th. There were reasons to suspect, as I mentioned earlier, because he did have some experience with tie-back episodes, but it was only in his deposition on August 27th that it became known that he had continued driving his car for miles after realizing he was having an episode, and he had sugar pills in his car that he could have taken, and then he chose not to take. So the liability case against Mr. Maratoni and the idea that he might be assigned a larger portion of the cumulative blame for the injuries increased significantly on August 27th. That information was relayed by letter to Mr. Bonaventura on September 1, and nine days later, September 10th, he begins the process of getting the authority to settle the case. That's a company trying to get the case settled. Thank you. Your time is up. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith